UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KATHY SUE MYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 02-B-0475-NE |
| ) | |
| GARY WALKER; JOEL GILLIAM; et al., ) | |
| ) | |
| Defendants. ) | |

FILED 04 SEP 13 AM 10:48

ENTERED SEP 13 2004

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 22.) Plaintiff Kathy Sue Myers has sued defendants Gary Walker and Joel Gilliam, alleging violations of her Fourth Amendment right to be free from unreasonable seizure arising from her arrest. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 22), is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his

burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff was arrested by defendant Walker, Investigator with the Decatur police Department on February 24, 2001, at the Days Inn in Decatur, Alabama. (Doc. 23, Ex. 2 ¶¶ 1, 6.) At the time of her arrest, plaintiff was dancing bare-breasted at a private party in the ballroom of the Days Inn. (*Id.* ¶ 6.) The party was organized by the Xchange Club, a "swingers" club. (Doc. 23, Ex. 1 at 36.)

Terry Poarch, the president or "host" of the Xchange club, testified that the club began in the early 1990s with an initial group or 35-40 married and unmarried couples. (*Id.* at 25-

27.) The club's activities included organizing monthly parties, referred to as "socials." (*Id.* at 38.) The club's website stated that the purpose of the club was "to provide a meeting place for sexually open-minded adults to congregate, converse and socialize, and that the club's "socials offer[ed] a night out for adult couples to dance, meet, and socialize with other open-minded couples." (Doc. 23, Ex. 2, ex. C at 3.) The website also stated that "no membership [is] required," but "[a] small fee is donated at the door to help provide for sodas, snacks or food, and a place to have our private party." (*Id.*) Poarch testified that if an attendee could not afford the fee, such fee would be waived. (Doc. 23, Ex. 1 at 47.)

Certain citizens of Decatur complained to the mayor's office regarding the club's activities. (Doc. 23, Ex. 2 ¶ 2.) These complaints included reports of illegal drug use and lewd activity. (*Id.*, exs. A and B.) The mayor's office informed the police department of the complaints, and the department began an investigation. (*Id.* ¶ 2.) Walker testified that, as part of the investigation, he discovered the website, which indicated that the parties were open to the public. (*Id.* ¶ 3.)

On February 24, 2001, the department received two anonymous telephone calls complaining of a disturbance at the Days Inn. (*Id.* ¶ 4.) One caller complained that adults were running around the hotel naked or scantily clad, and that she had smelled the odor of marijuana emanating from the hotel. (Doc. 23, Ex. 3 ¶¶ 2-3 and ex. A.) After a second call, the dispatcher told her sergeant, William Darby, and Darby, in turn, contacted Walker at around 10:45 p.m. (*Id.* ¶ 3; Ex. 2 ¶ 4.) After learning of the complaints, Walker, who had

3

been watching the Days Inn as part of his on-going investigation, went to the hotel and met Darby and other police officers. (Doc. 23, Ex. 2 ¶¶ 4, 6.)

Walker entered the hotel and went to the ballroom with the other officers. (*Id.* ¶ 6.) In an affidavit submitted in support of defendants' Motion for Summary Judgment, Walker stated:

> I arrived at the Days Inn at approximately 10:50 p.m. and joined Sergeants William Darby, Gregory Sexton, James Hood, and some other officers from the third shift in the parking lot. I then went straight to the front desk where I spoke with the night clerk, Steven Griffin and asked him what was going on upstairs. I heard loud noises coming from a balcony above the lobby area. . . . We proceeded up the stairs to the ballroom area to find the source of the noise. When I reached the top of the stairs, I pulled back a curtain and entered the balcony area with the other officers. There were several people there. I asked a male where the host of the party was and he pointed to the open door to the ballroom and said, "in there." I walked to the door and went inside.

(*Id.*)

Upon entering the ballroom, apparently to look for Poarch, Walker observed plaintiff dancing topless in a room with about 200 other people. (*Id.*) At the time he observed plaintiff, one man was dancing behind her while holding onto her breasts and another man was dancing in front of her with his head in her chest area. (*Id.*) At this point, he informed plaintiff that she was under arrest, and Darby took her into custody. (*Id.*) The arrest was without incident. (*Id.*)

At the time of plaintiff's arrest, the club had been having socials at the Days Inn for approximately four years. (Doc. 23, Ex. 1 at 40-41.) These socials were attended by 80-100 couples. (*Id.* at 36.)

4

## III. DISCUSSION

### A. CLAIMS AGAINST GILLIAM AND EXCESSIVE FORCE CLAIM AGAINST WALKER

Defendants contend that they are entitled to summary judgment because plaintiff's constitutional rights were not violated during her arrest. Specifically, defendants contend that Walker is entitled to summary judgment "because he had probable cause to make the arrest and also because he is entitled to qualified immunity from plaintiff's claims." (Defs. Mem. in Supp. of Mot. for Summ. J. at 10.) They contend that Gilliam is entitled to summary judgment because he did not personally participate or have any other involvement in plaintiff's arrest. Finally, defendants contend that plaintiff has not alleged an excessive force claim against either defendant.

Plaintiff's opposition to defendants' Motion for Summary Judgment is limited to whether Walker has probable cause, or arguable probable cause, to arrest her. She has not presented any argument in opposition to defendant's Motion for Summary Judgment as to the claims against Gilliam or the excessive force claims against both Walker and Gilliam. Therefore, the court finds that plaintiff has abandoned these claims. *See Smith v. International Paper Co.*, 160 F. Supp. 2d 1335, 1347 (M.D. Ala. 2001)(citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), *cert. denied* 516 U.S. 817 (1995)).

5

Defendant's Motion for Summary Judgment as to all claims against Gilliam and her claim of excessive force against Walker is due to be granted, and such claims are due to be dismissed.

### B. FOURTH AMENDMENT/WRONGFUL ARREST CLAIM AGAINST WALKER

Walker contends that he had probable cause to arrest plaintiff for indecent exposure, Ala. Code § 13A-6-68, because he had observed her dancing at the social with her breasts exposed. He also contends that, even if he did not have actual probable cause to arrest plaintiff, he had arguable probable cause, and, therefore, he is entitled to qualified immunity.

Because Walker contends that he is entitled to qualified immunity, "[t]he threshold inquiry [the] court must undertake . . . is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If the court finds a constitutional violation, Walker may still be entitled to qualified immunity "if [his] actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 739 (quoting *Harlow v. Fitzgerald* 475 U.S. 800, 818 (1982)).

#### 1. Constitutional Violation

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The standard for determining "probable cause" for an arrest is well, and long, established:

Probable cause exists where "the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

*Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)(quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925).[1] This standard "protects 'citizens from rash and unreasonable

---

[1]Alabama state courts have adopted this definition of "probable cause":

The Court of Criminal Appeals, in *Owen v. State*, 418 So.2d 214 (Ala. Crim. App. 1982), equated the term "probable cause" with "reasonable cause," as that latter term is used in § 15-10-3. In *Owen*, the Court of Criminal Appeals observed:

"'An officer may arrest without a warrant when "a felony has been committed and he has reasonable cause to believe that the person arrested committed it." Section 15-10-3, Code of Alabama 1975. The rule of reasonable or probable cause is a "practical, nontechnical conception." *Brinegar v. United States*, 338 U.S. 160, 176 (1949). As defined in *Draper v. United States*, 358 U.S. 307, 313 (1959):

" ' "Probable cause exists where 'the facts and circumstances within their (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been committed . . . ." (Citations omitted)

"'In determining whether there is probable cause to arrest, it is not necessary that the officer have before him evidence that would support a conviction for the offense. He need only have facts and circumstances within his knowledge which are reasonably trustworthy and which would lead a prudent man to believe that the accused committed or was committing an offense.'"

418 So. 2d at 220 (quoting *Tice v. State*, 386 So. 2d 1180, 1183 (Ala. Crim. App. 1980)). *See also Ex parte City of Montgomery*, 758 So.2d at 570.

*City of Birmingham v. Sutherland*, 834 So.2d 755, 760-61 (Ala.), *cert. denied* 123 S. Ct. 537

7

interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection.'" *Maryland v. Pringle*, ___ U.S. ___, 124 S. Ct. 795, 799 (2003)(quoting *Brinegar*, 338 U.S. at 176). "On many occasions, [the Supreme Court has] reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)(quoting *Brinegar*, 338 U.S. at 175-176); and citing *Ornelas v. United States*, 517 U.S. 690, 695 (1996); *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989))(internal quotations omitted). The Supreme Court has held, "[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Id.* at 800.

"[F]or a Fourth Amendment analysis, the difference between a ***mistake of law*** and a ***mistake of fact*** is critical." *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003)(emphasis added). [A]n officer's reasonable ***mistake of fact*** may provide the . . . probable cause required to justify [an arrest]. *Id.* (emphasis added). However, "a ***mistake of law*** cannot provide . . . probable cause to justify [an arrest]. *Id.* (emphasis added).

Also, even if Walker told plaintiff that she was being arrested for an offense for which no probable cause existed, he may nevertheless have had probable cause to arrest her. The Eleventh Circuit has held:

---

(2002).

> [T]he validity of an arrest does not turn on the offense *announced* by the officer at the time of the arrest. Indeed, when an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.

*Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002)(emphasis added); *see also Callahan v. State*, 557 So.2d 1292, 1302-03 (Ala. Crim. App.)("[T]he validity of the arrest should be judged by whether the arresting officers actually had probable cause for the arrest, rather than by whether the officers gave the arrested person the right reason for the arrest." (quoting *United States v. Lester*, 647 F.2d 869, 873 (8th Cir. 1981)), *aff'd* 557 So.2d 1311 (Ala. 1989), *cert. denied* 498 U.S. 881 (1990). "[W]hen a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest." *Mills v. Wainwright*, 415 F.2d 787, 790 (5th Cir. 1969).[2]

Walker arrested plaintiff for indecent exposure pursuant to Ala. Code § 13A-6-68(a), which defines the offense of indecent exposure as follows:

> A person commits the crime of indecent exposure if, with intent to arouse or gratify sexual desire of himself or of any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm in any public place or on the private premises of another or so near thereto as to be seen from such private premises.

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

*Id.* According to the plain language of the statute, the crime of indecent exposure requires exposure of "genitals." *Id.*; *see, e.g., Smith v. City of Huntsville*, 515 So.2d 72, 73, 75 (Ala. Crim. App. 1986)(noting that indecent exposure statute regulates "bottomless" dress, not "topless" dress). Considering defendants' contention that plaintiff was arrested after she exposed her breasts and not her genitals, the court finds that Walker apparently had no reason to believe that plaintiff was committing the offense of indecent exposure, as defined by the plain language of the Alabama statute. Therefore, his arrest of plaintiff for indecent exposure was without probable cause and, thus, violated plaintiff's Fourth Amendment rights.

Defendants also contend that Walker had probable cause to arrest plaintiff for a violation Ala. Code § 13A-12-200.11. Section 13A-12-200.11 provides, "It shall be unlawful for any business establishment or any private club to show or allow to be shown for entertainment purposes . . . the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple . . . ." *Id.* Liability under this statute is limited to the "business establishment" or "private club" that shows or allows to be shown a bare female breast. By its plain language, this statute does not criminalize the conduct of an individual who exposes her breast; rather, it criminalizes the "business establishment" or "private club" that provides her a forum for such conduct.

Because Walker at all times was aware of plaintiff's status as a mere attendee of the club's social, he could not have reasonably believed that she violated Ala. Code § 13A-12-200.11. Therefore, his arrest of plaintiff for violation of § 13A-12-200.11 was without probable cause and, thus, violated plaintiff's Fourth Amendment rights.

Finally, defendants contend that Walker had probable cause to arrest plaintiff for violation of Decatur City Ordinance § 2.6-11, prohibiting public nudity. Section 2.6-11 states, "The showing of post-pubertal human female breasts below a point immediately above the top of the areola . . . in a public place or any place to which members of the general public are invited is hereby prohibited." (*Id.*)

Plaintiff contends that defendants' Motion for Summary Judgment is due to be denied because the Decatur ordinance applies only to "business establishments or clubs or possibly 'topless bars' where some sort of entertainment purpose was being conducted," and/or "there would be no possible prosecution on any charge if the party was a private party not opened to the public." (Pl. Mem. in Opp. to Mot. for Summ. J. at 2.) The court finds plaintiff's argument to be without merit.

The parties do not dispute that plaintiff showed her bare breast at the club's social at the Days Inn. Moreover, Walker testified that, prior to the time he arrested plaintiff at the club's social, he believed that the club and the social, through its web site, invited the "general public" to its parties. (Doc. 23, Ex. 2 ¶ 3.) The court has reviewed the record, including the print-out of the club's web site, and finds that the evidence indicates that the club's socials at the Days Inn were places to which the general public was invited. Thus, the court finds that Walker's observation of plaintiff's activities, together with his knowledge about the open nature of the club's activities provide "a reasonable ground for belief of guilt . . . particularized with respect to the [plaintiff]," such that the arrest was made based upon probable cause. *See Pringle*, 124 S.Ct. at 800.

11

Therefore, Walker had probable cause to arrest plaintiff for violation of Decatur Ord. § 2.6-11, and, thus, he did not violate plaintiff's Fourth Amendment rights.

**2. Clearly Established**

Because the court finds that Walker did not violate plaintiff's Fourth Amendment rights when he arrested her, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Therefore, the court pretermits discussion of whether the law was "clearly-established."

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendants are entitled to judgment as a matter of law. An order granting defendants' Motion for Summary Judgment, (doc. 22), will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 13th day of September, 2004.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge